THE STATE OF KANSAS v. LEW. W. HEAD.

1. CITIES; *Changing Frontage of Lots.* Under the provisions of the act of March 13, 1879, "providing for changing the fronting of lots in incorporated cities," the changes made by an ordinance passed for that purpose have no validity until the certificate and plat referred to in § 3 of the act shall have been filed in the office of the register of deeds of the proper county.

2. ———— *Ordinance; Certificate, When Effective.* Such certificate, to be of any force or effect, must substantially comply with the provisions of § 3 of said act; and therefore the certificate of the clerk of the city must not only describe the ordinance changing the frontage of the lot or lots therein referred to, by its number and the date of its passage and publication, but must also set forth that by such ordinance a certain block or lot, or blocks or lots, of such city, (describing them according to their description upon the recorded plat of such city,) have been changed so as to accord with the plat to which such certificate is attached. (Laws of 1879, ch. 79, § 3.)

3. ———— *Certificate, Fatally Detective.* Where an ordinance is passed by an incorporated city to change the fronting of certain lots described therein, and the city clerk attaches the following certificate to the recorded plat of the block or lots affected by the proposed change, viz.: "CITY CLERK'S OFFICE, CITY OF TOPEKA.—The within plats presented to the council March 12, 1883, and approved March 12, 1883, as per ordinance No. 478, approved March 14, 1883, and published in the *Daily Commonwealth* March 15, 1883. Witness my official hand and seal of said city of Topeka, this 16th day of March, 1883. [Seal.]—GEO. TAUBER, City Clerk;" and the ordinance named in the certificate is not attached to the plat, or made a part thereof: *Held,* Such certificate is fatally defective as not being in substantial compliance with the provisions of § 3, ch. 79, Laws of 1879.

*Error from Shawnee District Court.*

ON December 19, 1883, an information, embracing twenty-four counts, was filed by the county attorney of Shawnee county against *Lew. W. Head,* for selling intoxicating liquors in a certain room in a certain building situated on lot 144, Adams street, in the city of Topeka.   It was alleged in the first count of the information that the sale therein described was made on October 3, 1883; in the other counts the sales were stated as made upon subsequent days to October 3, 1883, and prior to

the time of the filing of the information. Trial at the January Term, 1884. The testimony introduced on the part of the prosecution showed that the defendant sold intoxicating liquors on December 1 and December 8, 1883. The defendant admitted that he had no permit of any kind or character to sell intoxicating liquors. The jury returned a verdict of guilty against the defendant upon the first, second, third and fifth counts. The court sentenced the defendant to pay a fine of $100 under each count, aggregating the sum of $400, together with the costs of the prosecution, taxed at $192.80. The defendant was also adjudged to be committed to the jail of Shawnee county until the fine and costs were paid. The defendant was further required to give bond in the sum of $500, with good and sufficient sureties, that he would not, for the period of two years, sell any intoxicating liquors in violation of law. The defendant appeals.

*Waters & Ensminger*, for appellant.

*S. B. Bradford*, attorney general, and *Charles Curtis*, county attorney, for The State.

The opinion of the court was delivered by

HORTON, C. J.: After evidence had been introduced upon the trial on the part of the prosecution that the defendant had made several sales of intoxicating liquors at his saloon in the city of Topeka during the month of December, 1883, without having any permit therefor, the prosecution, to further maintain its case, produced J. B. Whittaker, who testified that —

"He had for twenty-seven years been a resident of the city of Topeka; that he had been for all that time a surveyor and civil engineer, and was well acquainted with the plat of the city of Topeka, and the lots and streets therein; that he knew the place occupied by the defendant as a saloon; that it was in the ground or street room of a two-story frame building fronting to the east the passenger depot of the Santa Fé Railroad Company, with the side of the building on the north of Fifth street in the city of Topeka; and that the lot upon which

the building was situated is lot No. 144, on Adams street, city of Topeka, county of Shawnee and state of Kansas."

The defense was, that the place of business of the defendant in the city of Topeka was 143 Holliday place, and not 144 Adams street; and that if he sold any intoxicating liquors anywhere in the month of December, 1883, in the city of Topeka, they were sold at 143 Holliday place, and not at the place described in the information. To support this defense, Col. Holliday was introduced as a witness, and testified that —

"The place of business of the defendant, in December, 1883, was upon lot 143 Holliday place; that the lot formerly was 144 Adams street, as stated by Whittaker, but in March, 1883, by ordinance of the city of Topeka, 144 Adams street was changed to 143 Holliday place, and Adams street was vacated and moved further west."

Col. Holliday stated that his testimony was based upon the action of the city of Topeka making a change of lots and streets in the vicinity of the Santa Fé railroad depot. The defendant then offered in evidence certain recorded plats, with the certificate of the city clerk of the city of Topeka attached thereto, for the purpose of showing the changes of the lots, streets and alleys, as testified to by Col. Holliday. The plats and certificate were objected to as incompetent and irrelevant, and were excluded by the court. The defendant offered to introduce in evidence the ordinance of the city of Topeka, No. 478, approved March 14, 1883, and entitled —

"An ordinance changing the frontage of certain lots, and re-numbering the same; also vacating part of a certain street and alley, and opening others in place thereof, in Holliday's addition to the city of Topeka."

The prosecution objected to the introduction of the ordinance, which objection the court sustained. A motion was then made by the prosecution to withdraw from the consideration of the jury all of the testimony of Col. Holliday based upon the ordinance of the city of Topeka, or the plats changing the frontage of the lots and streets referred to, which

motion was also sustained. To all of these rulings the defendant excepted.

The question in the case is, whether the proceedings inaugurated to change lot 144 Adams street to lot 143 Holliday place, were so carried out as to make the change valid; in other words, were the provisions of the act of March 13, 1879, entitled "An act providing for changing the fronting of lots in incorporated cities," complied with so far as Adams street is concerned? All of this turns upon the question, whether the certificate of the city clerk of Topeka attached to the recorded plats is in substantial compliance with the statute. The act of March 13, 1879, among other things provides:

"SECTION 1. That the mayor and council of any incorporated city shall have power to change the frontage of any lot or lots in such city in the manner hereinafter provided.

"SEC. 2. When the owner or owners of any lot or lots may desire to have the frontage thereof changed, they shall present to the mayor and council a petition, in writing, signed by such owner or owners, setting forth the description of such lot or lots with reference to the plat of such city and in accordance therewith, and specifically pointing out the change or changes desired, together with the reasons therefor, and shall attach to such petition two plats of each block that will be affected by the change prayed for—the first of which plats shall be an exact transcript of the then existing plat of such block as the same appears of record in the office of the register of deeds of the county; and the second of said plats shall accurately set forth and delineate the number, size and frontage of the lots comprised within such block as the same will be and appear in case the proposed change or changes of frontage shall be made.

"SEC. 3. Upon the presentation of such petition and plats it shall be the duty of the mayor and council, at their next regular meeting, to examine, consider and determine the same; and if it shall appear that the public interest and convenience will in no way be prejudiced by the proposed change, it shall be allowed and made by an ordinance to be for that purpose passed, approved, published, recorded and preserved in like manner as other ordinances of such city; and within ten days after the publication of such ordinance the city clerk shall make, under his hand as such clerk, and the seal of such city,

a certificate setting forth that by such ordinance (describing the same by its number and the date of its passage and publication) a certain block or certain blocks of such city (describing them according to their description upon the recorded plat of such city) have been changed so as to accord with the plat to which such certificate is attached, and attach the same to the plat last referred to in section two of this act, and then file such plat in the office of the register of deeds of the county, where the same shall be recorded and preserved as a part of the plat of such city."

And section 4 of said act expressly prescribes that—

"*No such change or changes shall be of any validity until the certificate and plat referred to in section three shall have been filed in the office of the register of deeds of the proper county.*"

The certificate attached to the recorded plat is in words and figures as follows:

"CITY CLERK'S OFFICE, CITY OF TOPEKA.— The within plats presented to the council March 12, 1883, and approved March 12, 1883, as per ordinance No. 478, approved March 14, 1883, and published in the *Daily Commonwealth* March 15, 1883. Witness my official hand and seal of said city of Topeka, this 16th day of March, 1883.

[Seal.]                    GEO. TAUBER, *City Clerk.*"

This certificate fails to describe the blocks or lots attempted to be changed by the ordinance approved March 14, 1883. In this respect the certificate is defective. It is impossible to ascertain from the plats as recorded, and the certificate of the city clerk attached thereto, that Adams street was vacated and moved farther west by ordinance No. 478. It is also impossible to ascertain from the plats and certificate the changes in the blocks and lots and streets and alleys attempted to be made by said ordinance. If the city clerk had attached to the plats a certificate setting forth the blocks or lots of the city, describing them according to their description upon the recorded plat of the city, changed by ordinance No. 478, it could be easily determined from the plats and certificate the blocks and lots which had been changed by the ordinance. If the city clerk had attached to his certificate ordinance No. 478 and made it a part of such certificate, the terms of the law would have been

fully complied with.    Even if ordinance No. 478 had been attached to the plats on file and properly referred to, we might hold the certificate sufficient; but in the absence of the ordinance, it is impossible to tell from the recorded plats and certificate attached, the changes proposed.    We must therefore hold that the certificate is fatally defective; that the statute has not been complied with, and therefore that no change of the lot in controversy has been made, as contended for on the part of the defense.

Of course, if in the sale and transfer of the lots described in ordinance No. 478, equities have crept in by mistake or misapprehension, a court of equity may protect the rights of all parties involved; but in an action of this nature we are not called upon to protect the equitable rights of any parties, and as the certificate of the city clerk is wholly insufficient within the terms of the statute, the changes of blocks and lots and streets and alleys attempted to be made by the city are without any validity.    The certificate referred to in § 3 of the act of March 13, 1879, has never been filed — at least, a certificate in substantial compliance with the statute has never been filed. The ordinance and plats were properly rejected by the district court, and there was no error on the part of the court in withdrawing from the jury the testimony of Col. Holliday.

The judgment of the district court must be affirmed.

All the Justices concurring.