No. 20,079.

A. KLIPP, *Appellee,* v. THE CITY OF HOYT, *Appellant.*

SYLLABUS BY THE COURT.

1. NEGLIGENCE—*Cities—Not Mandatory to Give Controlling Weight to Judgment of City Officials in Case of Doubt—Question for Jury.* In an action against a city for personal injuries predicated on a breach of the duty to maintain an improved street in a condition reasonably safe for public use, the court and jury are not required, as a matter of law, to give controlling weight to the judgment of the city officials in planning and constructing the improvement whenever it is so doubtful whether or not the improvement was dangerous that different minds might entertain different opinions regarding the matter.

2. SAME—*Contributory . Negligence—Properly Submitted to Jury.* The evidence examined and held sufficient to warrant submitting to the jury the issues respecting the negligence of the city and the contributory negligence of the plaintiff.

Appeal from Jackson district court; OSCAR RAINES, judge. Opinion filed November 11, 1916. Affirmed.

*J. J. Schenck,* of Topeka, *Guy L. Hursh,* and *E. R. Sloan,* both of Holton, for the appellant.

*D. H. Branaman,* of Topeka, *F. T. Woodburn,* and *E. D. Woodburn,* both of Holton, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one for damages for personal injuries sustained by a pedestrian while attempting to use a sidewalk on the margin of a city street. The plaintiff recovered and the defendant appeals.

The sidewalk was constructed of cement and was in good repair. At the place where the injury occurred the surface of the sidewalk was fifteen and a half inches above the surface of the street, and the sidewalk, which was elsewhere eight feet wide, was narrowed by a building which projected into it a distance of nearly three feet.

The plaintiff is a farmer who visits the city only occasionally. He had some acquaintance with the walk and had noticed that it was high. He had not been in the city for about

Klipp v. City of Hoyt.

five months before the night of December 19, 1913, when he was injured. The night in question was very dark and rainy. The street lamps were not lighted and there was no railing along the outer edge of the walk. The plaintiff walked slowly along the sidewalk, feeling his way, keeping the projecting building in sight as well as he could, and trying to see the edge of the sidewalk, when he fell into the street below and broke his right ankle.

With the general verdict in favor of the plaintiff, the jury returned the following findings of fact:

"Q. 1. Were the street lamps on Main street lighted at the time of the accident on December 19, 1913? A. No.

"Q. 2. If you answer question No. 1 in the negative, then was the defendant city negligent in not having its street lamps lighted? A. Yes.

"Q. 3. Was plaintiff injured on the night of December 19, 1913? A. Yes.

"Q. 4. If you answer question No. 3 in the affirmative, then would such injury have occurred if the street lights had been lighted? A. No.

"Q. 5. Was the plaintiff guilty of contributory negligence? A. No.

"Q. 7. On the night of the accident were there any guards of railings on the curb side of the walk where the accident occurred to prevent persons using the walk from stepping or falling off? A. No.

"Q. 8. If you answer question No. 7 in the negative, then state whether plaintiff would have fallen off said walk if there had been guards or railings placed along the curb side of said walk? A. We believe it not likely."

The defendant claims that as a matter of law it was not guilty of negligence. The substance of the argument is that there must of necessity be different levels in any plan of street improvement. Plans for street improvements, street lighting, and the like, are subjects committed to the judgment and discretion of the governing body of the city. When officers of a city exercise their best judgment, adopt a plan of street improvement, and following that plan construct the improvement according to approved methods, the city is not liable at all for incidental damages, and is liable to persons using the street only in the event that the improvement is manifestly unsafe. If the plan be one which many prudent men would approve, or if it be so doubtful whether or not the improvement be dangerous for use that different minds might entertain different opinions with respect to it, the benefit of the doubt must be given to the city. Several distinct subjects are embraced in this argument.

The city could light its streets or not, at its pleasure. Having installed lamps, the city could light them on such nights and during such hours as it pleased. These are subjects to be dealt with according to the judgment and discretion of the city authorities, and whatever their action, no legal duty is violated. In this case, however, liability was not predicated on the failure of the city to light its streets. The basis of the action was breach of duty to maintain a street devoted to public use in a condition reasonably safe for the public to use.

The city had a right to plan the street improvement according to its discretion. It could improve all or only a part of the street. It could build a sidewalk or not. It could establish the grade of the street and the grade of the sidewalk at different levels. It could fix the location and width of the sidewalk, the same as it could choose the materials entering into the construction of the walk. Considering merely the subject of the nature and extent of street improvement, no one could complain, whatever the city might do or forbear doing. The city, however, rested under the positive legal duty to keep its streets and sidewalks in a condition reasonably safe for their intended use. No matter how carefully plans of improvement were considered, and no matter how faithfully the adopted plan was executed, if the result were actual peril to persons using the street with due care the duty to make and keep the street reasonably safe for travel was not fulfilled and an action would lie in favor of one suffering injury consequent upon the breach of duty.

Decisions of this court established and illustrating the foregoing principles are very numerous. Among them are the following. *City of Atchison v. Challiss,* 9 Kan. 603; *Methodist Episcopal Church v. City of Wyandotte,* 31 Kan. 721, 3 Pac. 527; *Gould v. City of Topeka,* 32 Kan. 485, 4 Pac. 822; *City of Emporia v. Schmidling,* 33 Kan. 485, 6 Pac. 893; *McGrew v. Kansas City,* 69 Kan. 606, 77 Pac. 698; *The State v. Concordia,* 78 Kan. 250, 96 Pac. 487.

The law fixes the standard of the city's duty. Streets and sidewalks must be such that public travel on them may be reasonably secure. If on the trial of a case it be doubtful under the evidence whether or not a city has measured up to that standard, if the evidence be conflicting, or furnish the

basis for different inferences, the jury pronounces on the subject of liability or nonliability after having been instructed regarding the law. If there be no conflict of evidence or inference from evidence to be resolved, the situation is the same as if the entire case were stated in a petition against which a demurrer has been lodged. The jury has no function to perform, and the court applies the law and states the result. In either instance there is no presumption whatever, either for or against the propriety of the city's conduct. In the field of official discretion, the planning and construction of street improvements, all presumptions are in favor of correct official conduct. In the field of peremptory duty, to conform their work to a certain standard, no premium is placed on the judgment of city officers. The question is, Have they conformed? and the court and jury determine the case precisely as they do other cases involving charges of imprudence and misconduct.

The standard applied by the court, or by the jury under the direction of the court, rests in a supposed generalization of the experience of ordinarily prudent men. The fact that the generalization has not been and can not be crystallized into perfectly definite form, as, for example, that curbing shall not be more than eight inches high, does not detract from the authority of the standard (*Ellsworth v. Jarvis,* 92 Kan. 895, 141 Pac. 1135), and affords no basis for assuming that work planned and executed by the officials of a municipal corporation reaches the required standard of perfection. In the case of *Gould v. City of Topeka,* 32 Kan. 485, 4 Pac. 822, it was· said that the benefit of the doubt might properly be given the city when under the facts it is so doubtful whether or not the street planned by the city is dangerous that different minds might entertain different opinions about the matter. It was not said that benefit of the doubt must be given the city. No governing principle was stated. No new standard was set up—diversity of opinion instead of reasonable prudence. The issue was not shifted from whether or not a sidewalk is dangerous to what different people may think about it. The statement amounted to no more than an observation on how the mind might operate when in grave doubt. In this case the question

whether or not, under all the circumstances, including the encroachment of the building, the absence of light and the absence of a railing, the sidewalk was reasonably safe if used at night by a person who exercised due care on his part, was properly submitted to the jury.

The defendant claims that as a matter of law the plaintiff was guilty of contributory negligence. Stress is laid on the plaintiff's knowledge of the condition of the walk. This court has said time and again that a pedestrian may use a defective street or sidewalk, knowing its condition, without being guilty of contributory negligence, and may do so after dark. The question always is, whether or not under all the circumstances the pedestrian exercised due care. In this case the question was properly submitted to the jury.

The cause was submitted under admirable instructions, the verdict and findings were sustained by sufficient evidence, and the judgment of the district court is affirmed.